UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BEVERLY J. McCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:05-CV-005-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Beverly J. McClure seeks judicial review of a decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits and Supplemental Security Income. The United States District Judge transferred this case to the United States Magistrate Judge, but McClure did not consent to the jurisdiction of the court.

Pursuant to the order of transfer, the undersigned files this "Report and Recommendation." After reviewing the arguments of the parties, the administrative record, and the applicable law, this court recommends that the Commissioner's decision be affirmed and that McClure's case be dismissed.

### I.  Facts

The issue before the Administrative Law Judge (ALJ) was whether McClure was disabled during the period of time between July 12, 2001, the beginning date of her claim of disability in this case, and December 1, 2005, the date on which she returned to full-time

work as a waitress. (Tr. 53-54.) McClure claims she stopped working on February 21, 2000, because she was unable to perform the lifting required to work in a daycare center. (Tr. 158.) She testified that she was unable to work thereafter and up until December 2005 because she suffered from mental problems and problems in her back. (Tr. 1261, 1265.) She testified that she was depressed, despondent, and suicidal during the time period and "couldn't get out of [her] house." (Tr. 1261.) She claimed she was able to resume working in 2005 because the dosages of her psychiatric medications were adjusted and the new combination of medications helped her. *Id*.

The ALJ determined that McClure suffered from severe impairments related to her back pain and gastroesophageal reflux disease but that she retained the Residual Functional Capacity (RFC) to perform non-complex light work. (Tr. 60.) He then determined that she was capable of performing her past work as a dispatcher. (Tr. 61.) McClure argues (1) that the ALJ failed to accord proper weight to opinions offered by her treating psychiatrist; (2) that the ALJ failed to properly consider all of her impairments and that his residual functional capacity finding is not supported by substantial evidence; and (3) that the ALJ failed to properly assess the credibility of her testimony.

## II.     The ALJ's Consideration of Physician Opinion

McClure claims the ALJ failed to accord proper weight to opinions offered by her treating psychiatrist Victor A. Gutierrez, M.D. Dr. Gutierrez completed a form on July 7, 2003, on which he noted McClure's ability to perform work-related mental functions and her ability to interact with others in social and work situations. (Tr. 306-09.) McClure

points out that Dr. Gutierrez noted that she had only a "fair" ability to relate to co-workers, deal with the public, use judgment, deal with work stresses, maintain attention and concentration, follow detailed and complex instructions, and behave in an emotionally stable manner. (Tr. 307-08.) She also points out that Dr. Gutierrez noted that her attention and recall were a problem when she was dealing with a lot of stress and that she experienced difficulty dealing with unfamiliar places. (Tr. 308.) McClure argues that Social Security Rulings 96-5p and 96-2p require the ALJ to give deference to opinions from treating physicians and to provide appropriate explanations for accepting and rejecting a treating physician's opinions.

Ruling 96-5p addresses the manner in which an ALJ should consider opinions from treating physicians on issues reserved to the Commissioner, including opinions that a claimant is "disabled" or limited to work at a certain exertional level. SSR 96-5P, 1996 WL 374183 at *1. Ruling 96-2p, on the other hand, addresses the manner in which an ALJ should consider "medical opinions," which are opinions on the nature and severity of the claimant's impairments and what a claimant can still do despite impairments. SSR 96-2p, 1996 WL 374188 at *1-2 (citing SSR 96-5P, 1996 WL 374183). The opinions at issue in this case are "medical opinions" because they concern what McClure was capable of doing despite her impairments. *Id*.; *see* Tr. 306-08. Ruling 96-2p directs that the ALJ may accord controlling weight to a physician's medical opinions if the opinions are well supported and not inconsistent with other substantial evidence in the record and that the ALJ must explain the weight accorded to a physician's medical opinion. SSR 96-2p, 1996 WL 374188 at * 4-5.

The ALJ specifically stated that he gave "significant weight" to Dr. Gutierrez's progress records and opinions. *See id.* The ALJ noted that Dr. Gutierrez consistently reported that McClure exhibited an overall stable mood, normal psychomotor activity, good memory, and organized thought process; engaged in coherent and goal-directed conversations; experienced good sleep on medication; and had a "fair to good ability" to perform work-related mental activities. *Id.* The ALJ's finding that McClure was capable of performing non-complex light work does not contradict any of the reports from Dr. Gutierrez, including his report that McClure exhibited a "fair" ability to perform certain work functions. According to the form Dr. Gutierrez completed, an individual exhibits "fair" ability to perform a work-related function when his ability to function in the area is "seriously limited but not precluded." (Tr. 306.) The fact that McClure had a "fair" ability to perform certain work-related activities would not preclude her from performing non-complex work. In addition, as the ALJ noted, Dr. Gutierrez also indicated that McClure exhibited a good ability to perform certain work-related activities. For example, he indicated McClure exhibited a good ability to follow work rules, interact with supervisors, function independently, and follow simple job instructions and that her ability to maintain her personal appearance, to relate predictably in social situations, and to demonstrate reliability was good. (Tr. 307-08.)

### III. The ALJ's Consideration of McClure's Impairments and His RFC Determination

McClure claims the ALJ erred in considering a number of her impairments, including

4

her bipolar disorder, memory problems, hearing loss, tachycardia, and hand tremors. She specifically argues that her bipolar disorder, tachycardia, and hand tremors are severe impairments and the ALJ's failure to characterize them as such constitutes reversible error. She further argues that the ALJ's failure to address limitations caused by these and the other aforementioned impairments was an abuse of discretion.

McClure's arguments do not require remand. First, a finding that a specific impairment is not "severe" does not require remand in a case in which the ALJ determines at the fourth or fifth step of the sequential disability evaluation that the claimant can work. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *see also Stone v. Bowen*, 752 F.2d 1099, 1105 (5th Cir. 1985) (indicating that in cases in which the ALJ does not apply the correct severity standard, remand is required only when the plaintiff's claim for benefits is denied on the basis of non-severity.) In this case, the ALJ determined at step four of the sequential disability evaluation that McClure was not disabled. The ALJ's non-disability decision was based on his conclusion that McClure was capable of performing her past work; his non-disability decision was not based on his determinations about the severity of her impairments. (Tr. 61-62.) Additionally, the ALJ properly considered all of McClure's impairments, including the combined effect of her impairments, and his determination that McClure's impairments did not render her disabled is supported by substantial evidence.

In regard to her bipolar disorder, the medical records demonstrate that McClure's bipolar disorder was controlled with medication. (*See, e.g.,* Tr. 313, 319-20, 341, 531, 513-14, 778, 784, 1251.) In regard to her memory loss, Dr. Gutierrez specifically reported that

5

McClure's retention and recall and remote memory were "good" and that her ability to follow work rules and to understand, remember, and carry out simple instructions was "good." (Tr. 307, 515.)

In regard to her tachycardia, McClure argues that a treating physician stated that she should not work shifts longer than eight hours and that she needed adequate days off every week. (*See* Tr. 98-81.) The physician's statements have no bearing on the ALJ's decision; the physician's statements were rendered approximately nine months after McClure returned to full-time work and are therefore immaterial to the time period at issue in this case. *Id*. In addition, nothing in the physician's statements would preclude McClure from working a normal eight-hour workday or a normal five-day workweek. On July 20, 2006, the physician noted that McClure "may work a 5 day week and 8 hours per day." (Tr. 981.) On August 2, 2006, the physician stressed that McClure should not work shifts lasting longer than 8 hours per day and that she needed "adequate" days off every week. (Tr. 980.)

As to her argument regarding impaired hearing, McClure points to her testimony that she could not wear her hearing aids when she worked as a waitress because the restaurant was wired for wireless Internet access and because the noise interference from customers accessing the Internet caused a buzzing noise in her hearing aid that, in turn, impaired her hearing. (Tr. 1083, 1287.) Although the particular technology at the restaurant where McClure worked may have interfered with her ability to hear, there is no evidence that the technology at her prior job as a dispatcher would impose difficulties on her ability to hear. In fact, McClure testified that she had worn hearing aids since she was six or seven years old,

and there is no indication in the records that she experienced difficulty hearing or communicating with the ALJ at her hearing or with any of her psychiatrists, caseworkers, or physicians during her examinations and interviews. (Tr. 1287; *see* Tr. 263-64, 348-58, 460, 1071-87.) In addition, a caseworker reported that McClure was able to communicate well with others. (Tr. 543.) The evidence demonstrates that McClure's hearing impairments would not have imposed limitations that would affect her ability to work as a dispatcher.

The evidence likewise shows that McClure's hand tremors were not severe and would not have imposed limitations on her ability to work as a dispatcher. According to the medical records, McClure suffered, on an intermittent basis, from "mild" hand tremors that were attributed to changes in her medication. (Tr. 513-15, 734, 778.) McClure indicated on application documents that she was not limited in using her hands (Tr. 137), reported that she was able to drive (Tr. 139), reported that she sometimes did needlework (Tr. 350), and told Dr. Gutierrez that she enjoyed playing slot machines (Tr. 313, 320.)

Finally, contrary to McClure's contentions, the ALJ's decision demonstrates that he considered the combination of her impairments and the impact they would have had upon her ability to work. (Tr. 56-60.) His decision that McClure was capable of light work involving non-complex tasks and that she could work in her previous job as a dispatcher is supported by substantial evidence. McClure reported on applications documents that she walked three blocks in the late afternoon for exercise, that she cleaned her home, and that she was able to drive. (Tr. 136-39.) She reported to physicians that she babysat three children and that she enjoyed babysitting children, and she rated her overall health as "good"on a patient health

history form. (Tr. 547, 1185.) Based on her own testimony, McClure was capable of performing her prior work. She testified that in her prior job as a dispatcher she received telephone calls from truck drivers at a Wal-Mart distribution center, that the truck drivers provided her with updates about their whereabouts and mileage, and that she instructed them as to whether, according to a schedule drafted by another individual, they were required to return to the distribution center or drive to another location. (Tr. 1266-67.) There is more than a scintilla of evidence to support the ALJ's decision that McClure was capable of performing her prior work as a dispatcher and was not disabled. His decision should therefore be affirmed. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).

## IV.   The ALJ's Credibility Determination

McClure argues that uncontradicted medical evidence demonstrates a basis for her testimony about her pain and limitations. Citing Social Security Ruling 96-7p she argues that the ALJ was therefore required to weigh the objective medical evidence and articulate reasons for discrediting her testimony. McClure claims the ALJ did not undertake the required analysis.

Under Ruling 96-7p the ALJ must assess the claimant's credibility by considering factors related to the claimant's daily activities, the frequency and intensity of the claimant's symptoms, and the treatment the claimant receives. S.S.R. 96-7p, WL 374186, at *3. The Ruling further requires that the ALJ's decision include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at *4. The ALJ must

determine the truthfulness and reliability of the claimant's subjective allegations and "indicate the credibility choices made and the basis for those choices." *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981).

The ALJ in this case complied with the requirements of Ruling 96-7p. He assessed McClure's claims and provided specific reasons for rejecting them. The ALJ first noted discrepancies between McClure's testimony and the evidence. McClure testified that she was unable to work prior to December 2005 because she did not have access to the medications she needed to stabilize her mental condition and that she was unaware of the services offered by Mental Health and Mental Retardation (MHMR). (Tr. 1260, 1264 ("I couldn't afford to go to a psychiatrist on my own and I didn't know about MHMR.").) The medical evidence demonstrates, however, that McClure was treated and was provided with medications for her psychiatric conditions through MHMR as early as 1996 (Tr. 590) and that she was provided psychiatric treatment and medications throughout the time period during which she claims she was disabled. (Tr. 320, 340-41, 531, 547, 575, 703, 784, 937.)

The ALJ also found that McClure's allegations were refuted by her reports of driving, by her reports that she vacationed with friends in New Mexico, and by the fact that she babysat children during the time in which she claimed she was disabled. (Tr. 59.) He noted that McClure lived independently and was able to care for her own needs, perform household and cooking chores, and provide transportation for the children she babysat. *Id.* The ALJ also noted that McClure cared for children in her home for years. (*See* Tr. 531, 703.) She cared for one of the children beginning at the time the child was six weeks old and up until

9

the child began preschool. *Id.* The ALJ determined that McClure's allegations were refuted by the fact that she performed duties for the children she babysat, which included the provision of meals, the meeting of all physical and toileting needs, the meeting of their emotional needs, the dispensing of medication when warranted, and the responsibilities that called for intact, responsible judgment. (Tr. 59.) He concluded that the ability to mentally and physically provide the level of care necessary to care for children was inconsistent with McClure's allegations of memory and concentration deficits and allegations of debilitating hand tremors. (Tr. 59.) The ALJ was correct in his conclusion; caring for children on a sustained basis as McClure did contradicts her claims; the claimant's daily activities are relevant to the evaluation of a claimant's credibility. *See Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990); *see also Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991).

The ALJ in this case complied with the requirements of Ruling 96-7p and articulated reasons for rejecting McClure's allegations. Because there is substantial evidence to support his conclusion, it must stand. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

## V.     **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss McClure's complaint.

## VI.    **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy

of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: July 29, 2008.

                                      NANCY M. KOENIG
                                      United States Magistrate Judge